﻿Citation Nr: 19159009
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 14-41 286A
DATE: July 30, 2019

REMANDED

Entitlement to service connection for a left carotid artery condition, to include carotid artery disease and status post carotid endarterectomy (claimed as surgery to unclog carotid artery), is remanded.

REASONS FOR REMAND

The Veteran served on active duty in the United States Army from December 1970 to December 1990.

This matter comes before the Board of Veterans Appeals (Board) from an August 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran presented testimony at a November 2016 Board Hearing before the undersigned, the transcript of which has been associated with the record.

The Board remanded the case in November 2018 to provide the Veteran with a VA examination. The Board directed the VA examiner to provide an opinion as to whether it is at least as likely as not (50 percent probability or greater) that any current condition or condition that required the carotid artery surgical procedure (a) had its onset during service or (b) is related to any event or incident of the Veteran’s period of active service found in the Veteran’s service treatment records and noted by the Veteran in his testimony before the undersigned in the November 2016 Board Hearing. 

In March 2019, the Veteran was afforded a VA examination in which the examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. She reasoned that “according to the medical literature, carotid artery disease develops slowly over time and occurs when fatty deposits (plaques) clog the blood vessels that deliver blood to your brain and head (carotid arteries).” 

Subsequently, the RO requested a clarification, finding that the opinion did not comply with the Board’s remand instructions insofar as the examiner did not address the specific evidence in the case reference in the Board’s remand. Accordingly, in April 2019, the examiner provided another opinion, finding that the Veteran’s condition was not at least as likely as incurred in or caused by his active duty service. She reasoned that that the Veteran’s “initial presentation of his carotid artery stenosis began with a loud carotid bruit that was discovered by his primary care provider” as he was referred to “vascular surgery and found to have a significant left carotid artery stenosis which required a left carotid endarterectomy” in 2006. She further noted that the carotid artery stenosis was “not discovered during the Veteran’s military service and is not related to any event or incident that occurred during his service.” The examiner reasoned that carotid artery disease develops slowly, and the first sign of the disease may be a stroke or transient ischemic attack and the signs of such include a sudden numbness or weakness in the face or limbs, often on only one side of the body, sudden trouble speaking and understanding, sudden trouble seeing in one or both eyes, sudden dizziness or loss of balance, and sudden, severe headaches with no known cause. She further reasoned that the “Veteran’s chest pain and tightness are not symptoms that demonstrate carotid artery stenosis and were not the first manifestations of his carotid artery stenosis.” 

Compliance with remand directives is not discretionary; the Board errs as a matter of law when it fails to ensure remand compliance. Stegall v. West, 11 Vet. App. 268, 271 (1998). However, only “substantial compliance” with the terms of a remand request is required. D’Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that only substantial compliance would be required, not strict compliance). In that regard, the Board finds that the March 2019 and April 2019 opinions do not substantially comply with the remand directives, as the examiner did not discuss the Veteran’s report of his symptomatology since service, including his testimony during the hearing, such as his “dizzy spells,” “lightheadedness,” and the Veteran’s contention of the years of buildup in the arteries (from the 1970s to 2004) that led to a 98 percent artery blockage. Moreover, the examiner did not discuss the evidence noted in the body of the November 2018 Remand, such as the Veteran’s STRs, separation examination, and medical reports. Therefore, a remand is necessary to ensure substantial compliance. D’Aries, supra.

The matter is REMANDED for the following action:

1. Schedule a VA examination for the claimed left carotid artery condition. The examiner should provide an examination in accordance with the November 2018 Remand Directives, which includes the following:

a. Provide an opinion as to whether it is at least as likely as not (50 percent probability or greater) that any current condition or condition that required the carotid artery surgical procedure (i) had its onset during service or (ii) is related to any event or incident of the Veteran’s period of active service, including the service treatment record entries noted in the November 2018 Remand and below. 

b. Discuss the below STR entries as noted and the Veteran’s statements concerning his symptomatology, specifically the lay statements given in his testimony during the November 2016 Board Hearing, such as the following:

i. The April 1973 service treatment records (STRs) which noted an examination of the Veteran’s chest was ordered; 

ii. The March 1976 Optometric Examination report where the Veteran reported headaches while working;

iii. The February 1978 in-service examination report where the Veteran reported having dizzy spells, and the physician noted intermittent dizziness and imaging of the Veteran’s chest was ordered; 

iv. The April 1979 STRs where the Veteran reported for treatment reporting left side chest pain; 

v. The November 1982 STRs where the Veteran was seen at the optometry clinic because he could not drive at night due to his sight and failed his physical; 

vi. The March 1987 STRs where the Veteran reported that he had been feeling dizzy for two weeks; 

vii. The April 1988 and May 1988 STRs where the Veteran reported for treatment complaining of sharp chest pain and tightness and where he was noted to have increased cholesterol and a chest wall spasm, AND an electrocardiographic record dated April 1988 is associated with the record; 

viii. The October 1990 STRs that showed that imaging of the Veteran’s chest was performed; and 

ix. Finally, the October 1990 separation examination where the physician noted the Veteran had problems seeing at night while driving. 

In addition, the examiner is advised to take into account all the Veteran’s reports in formulating the requested opinion, such as his account as testified in the November 2016 Board hearing regarding his symptoms that were suggestive of the condition that ultimately led to the blocked artery, such as:

i. Mid 1970s to the 1980s symptoms-a lot of bad chest pains so bad that he would “actually double up and not be able to move at times;”

ii. 1978 symptoms-dizzy spells, feeling lightheadedness occasionally for 3-4 years and once again in February while on active duty;

iii. April 1979 chest pains on left side;

iv. November 1980 (as noted in STRs)-sharp pain in the chest radiating to the thoracic back;

v. 1987 symptoms- dizziness, lightheadedness;

vi. April 1988 and May 1988-chest pains (seen by physicians at the Army Community Hospital); and

vii. Finally, Veteran’s contentions that blockage building up all the time to get to 98 percent blockage which was found in the carotid artery surgery. 

The examiner is advised that the Veteran is competent to report symptoms, treatment, and injuries, and that his reports must be taken into account in formulating the requested opinion. 

If the reviewing health care provider finds that physical examination of the Veteran and/or diagnostic testing is necessary, such should be accomplished.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. 

2. After the development above has been completed, review the file and ensure that all development sought in this REMAND is completed. 

(Continued on the next page)

 

Arrange for any further development indicated by the results of the development requested above and re-adjudicate the issues on appeal. If the determination remains averse to the Veteran, the AOJ should furnish an appropriate Supplemental Statement of the Case and afford the Veteran the opportunity to respond. The case should be returned to the Board for further appellate consideration, if in order, for further review.

 

ANTHONY C. SCIRÉ, JR

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD T. Jones Council, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.